Anthony Robinson has an IQ of 76. He is borderline retarded and that has a significant part throughout this case and I don't believe it can be ignored at any point. He's in a situation where he joins along in a situation that turns out to be a robbery and the whole issue is whether or not he knew about it and at what point he knew about it. The defense argued at the trial that he only knew, he never knew about it at all, even at the point beforehand when they entered into it. Wouldn't make much sense, save for the fact when he testified at that trial. I guess half the jury believed him. The evidence was very strong that he would have and should have known about it during the proceedings. But that trial ended in a hung jury when six jurors found that he did not. That testimony was presented at his second trial. I don't know why he wasn't called at that second trial, but he wasn't. But his testimony was presented. The argument was again made that he didn't know that a robbery was going on. That such silly things as if he thought it was a game or it wasn't for real and silly things like. He left his gun outside while the robbery was going on inside and said silly things as he only picked up the gun afterwards on the way out. In order to not make the other guys mad at him because he thought they'd get mad at him when there would be for leaving back evidence. Those things wouldn't have made much sense. But for his mental condition, just to clarify something. Am I correct that on the surveillance video it shows that he had his mask up when he went into the store? Yeah, there's there's a lot of it. How do you explain that? Because I mean, some of the other issues seem sort of ambiguous or equivocal. But someone who puts a mask on when they walk into a convenience store with a bunch of other guys who have guns. It seems it's kind of hard to argue that he doesn't know it's a robbery. He thought it was a play robbery is what he said. Play robbery. That's what he said. A silly response. Apparently that same evidence was presented at the first trial. Your Honor, that same evidence, I believe, convinced. I said, you know, we don't interview the jurors and don't have their statements as to why they had a hung jury the first time and why six voted one way and six the other. But the evidence was identical in that regard. But couldn't the jury conclude that he was in on the robbery from the start if he walked in with a mask on? Sure. Of course, they could have. So concluded six of the jurors probably did at that first trial. Six of them did not at that first trial. And all I can say is that you're on the first trial. No, but we're here to talk about when he joined in the intent and more specifically, whether or not there was evidence to support the idea that he joined in after the shooting. Under California law, if you join in after the shooting, you can't be responsible for the murder. Everyone agrees on that. And even though everybody agrees that district attorney's argument to the contrary was wrong, the question is, would it have made any difference on what how it went against the tactic of the lawyer and so forth? So I totally. Excuse me. If it's your theory that it was a play robbery, what difference would this Polito instruction have made anyway? It seems inconsistent with. It's not my theory. The Court asked, couldn't jurors have concluded that? No, I'm asking you. I mean, why should the Polito instruction have made any difference if it was the defense theory that it was a play robbery? It's not the defense theory it was a play robbery at all. It's the defense theory that if there was, if he joined in at any point, it was afterwards only by the virtue of having picked up the gun outside the robbery outside the liquor store, which he had left there on a I guess it's a little cement area to help to help them not get caught. Your your client's trial counsel did not request a Polito instruction. That's right. So the only issue we have is whether it was plain error for the judge not to sue a sponte. No such instruction. I believe the other issue is whether that's not the only issue. The other issue is as it relates to Polito. It's a question whether it's IAC not to make that request. They both resolve around revolve around the Polito instruction. I totally agree with that. Whether or not defense counsel should have made that request and whether or not the court. Those are very different issues. On the IAC issue, the council may have made a strategic decision for exactly the reason you're arguing that the first jury hung. And he might not have wanted an instruction that said, well, my client may have joined this on the way out by hiding the gun. And frankly, I would not have even raised the IAC issue if that's the state, if that was the state of the evidence. But for one factor, that whole theory might have been raised. The whole case might have been based on that tactic. But at the point in time when the prosecutor walked up in front of that jury and said, ladies and gentlemen, it doesn't make a bit of difference. All that stuff about whether or not he joined beforehand doesn't matter at all because under his own words, as soon as he picked up that gun and touched it, he's guilty. At that point, which the DA didn't argue until rebuttal and didn't argue it the first time and waited until the second time to make the second, at the second trial, at the second rebuttal argument. At that point, there is no tactical reason not to request that, the paleto instruction. None. Zero. Can't be. I can totally agree. I'm primarily a trial counsel myself as opposed to appellate work. And I've been in that situation and I completely understand the idea of taking tactical decisions and making it just as the court has said. But at that point in time, when that DA gives what I have called the anti-paleto instruction, an instruction that says, here's what California law is. One doesn't make a bit of difference. Touch the gun and you're guilty throughout the whole thing. At that point in time, I believe it becomes IAC for that counsel, one, not to make the request, not to object to it, not to make a paleto instruction request, and becomes the obligation of the court to instruct. Let's go back to your first issue for a moment, because on the IAC, it's a different issue than you've given your argument on it. But just on the sua sponte judge requirement, what's your ‑‑ explain your theory on that. Well, it does tell things what I was just saying. I don't believe the court might have ‑‑ I believe the court might not have had as powerful a sua sponte obligation. If there can be sometimes ‑‑ if we can discern between a sua sponte obligation and a really strong sua sponte obligation, I'm not sure if there is such a distinction. But if there is, the issue is settled at the point in time when the judge also hears the DA give that wrong instruction or statement of law to the jury. The DA didn't give a wrong instruction. The DA was arguing what the law was. Right. You're right. He may have been an error, but the jury was instructed that what the DA said was not the law. What the law is, is what the judge instructed. Right? But that compounds the problem. That's exactly correct. But that compounds the problem. The problem is the court ‑‑ What the DA says is argument. He may be wrong about the facts. When you say the DA instructed, he didn't instruct. You're totally right. I misspoke. He didn't instruct. He just argued the instruction. And what the judge then says to the jury later on is exactly what your Honor says. It's just argument. I state the law. You don't state the law. Look at the other instructions. However, what did the jury ‑‑ what did the judge leave them with, the instructions at that point? In face of that argument, even having made that argument, what instruction did the judge leave them? Left them with the instruction that says, how long does a robbery last? From the beginning until they find a point of safety. And another instruction that says, if you join in the robbery at any point, you're responsible for felony murder. In effect, the judge left them with incomplete instructions. So that idea that that curative instruction, Your Honor, that says that if you refer to the correct instruction, the jury should have done that, there wasn't any correct instruction regarding this point given by the court. That's why I say it magnifies, it exacerbates the situation. That's why I say, at that point, the court owed an obligation to ensure that that instruction be given, the instruction that dealt with the Pulido area. And, Your Honor ‑‑ Do you want to reserve a minute or so for rebuttal? I do, Your Honor. Thank you. Thank you. Good morning. Good morning. May it please the Court. Lynn McGinnis, Deputy Attorney General for the Appellee. Well, first of all, may it please the Court, I'd like to back up a little because this is a federal habeas proceeding and we're under the ADEPA. So the first question we have to ask, especially with regard to the ineffective assistance of counsel, is whether, in essence, the appellate court unreasonably or arbitrarily applied Strickland when it found that the appellant at that time hadn't made out a case of either defective performance or prejudice. What the Fourth District Court of Appeal Division I found was on this direct appeal where, first of all, they did apply Strickland. They applied Ledesma, which is the same as Strickland. So you can't say they didn't apply United States Supreme Court precedent. They applied the two prongs. And when they applied the first prong of Strickland, and the magistrate did this again, what they found is on a direct appeal, when you're arguing ineffective assistance of counsel, you have to show that there's no possible tactical reason for the decision. This wasn't a state habeas where you get counsel testified to what he would do in a trial, but the state appellate court didn't have any declaration from trial counsel or from a Strickland expert or from anybody else saying that a reasonable attorney wouldn't do this. So what the court of appeal and the district court were looking at is whether there could be any possible tactical reason for this, because that's the law under both Strickland and Ledesma. And they found that on the direct appeal, one possible tactical reason was because the theory was lack of specific intent. And to request this Palito instruction would have been inconsistent with the defense theory. All of the defense witnesses testified that this guy was too dumb or naive to ever participate in a robbery, that he just picked up the gun because he thought he was helping his friend out. So the defense theory was lack of specific intent at any time, and what the court of appeal found with regard to that is that one possible tactical reason for not requesting the instruction was it would water down the defense theory. So the question is, is that an unreasonable or arbitrary application of Strickland to the facts of this case? And the answer to that is no. With regard to the rebuttal argument, the court of appeal and the magistrate expanded on it, found that the rebuttal argument, first of all, was not a misstatement of the law, because he didn't argue that the jury could find him guilty of murder if he formed the specific intent later. What the prosecutor argued on rebuttal was with respect to the robbery charge. He said, he's guilty of robbery. Even if he picked up that gun later to help him, he's guilty of robbery. That's the law in California. He didn't talk about murder. So the argument was, what the magistrate found the argument was, was incomplete because he didn't talk about the murder charge. What the DCA found on the direct appeal was that if, in light of the jury being instructed that arguments are not evidence and the fact that this was a rebuttal argument at the very end of a very strong case, that there was no possible prejudice from this rebuttal argument. So the question we have to ask is whether that's an arbitrary application of the second prong of Strickland. The answer to that question is no. So on the habeas question, that's where the inquiry on IAC stops, because we're not on the direct appeal now. We have a well-reasoned, long direct appeal decision rejecting this argument, applying Strickland correctly to the law of this to the facts of this case and finding against the appellant in this case. So that's where you end. We have a district court doing it again. On the jury instruction issue, the question is on this appeal from a habeas is whether, A, the court of appeal was unreasonable, which they weren't, and, B, whether this so infected the trial that it was a denial-of-due process, not whether it would have been better to give the instruction or whether under California law there's a sua sponte duty. The question is whether it infected the trial to become a denial-of-due process. If you look at this Polito decision, which, incidentally, is only six months before the trial on this case, and you read Polito, the way Polito is written, and it doesn't really say, and that's what the law was at the time without anything that came later explaining this, the court in Polito did not rule that there was a sua sponte duty to instruct on this. What the court said was that we don't need to decide whether there was a sua sponte duty to instruct on this case, and that there is no prejudice. Now, it's not entirely clear, but the way they analyze this instruction under the old version of the Watson test for instructions, which is cured by other instructions, the way they analyze the prejudice prong of this instead of using Chapman or reversible per se, they appear to be deciding that this is a defense, not an element of the offense, that there's no duty at the outset to instruct that if you join the robbery late that you're not guilty of murder. This is something the defense can raise, and then they can request an instruction on it. Since it's not an element of the offense, it's an affirmative defense, there's no reason that there would be a reversal in a federal court for not giving this instruction. Even if you could find somehow that it's a denial of due process, which we don't think you can, what the court of appeal found, if I recall correctly, is that given the overwhelming evidence in this case, which was a surveillance videotape, a mask over his head, five people or so testifying that he told them he planned this robbery, from the outset, and his own testimony, which defense argued meant he had no specific intent at all, that there could be no possible prejudice under any theory from a denial of giving this instruction, which there's no duty to give in the first place. So unless the Court has any questions, we would submit. Thank you, Ms. McGinnis. Thank you. Bloom, you have about a minute left. I'm going to be brief. The question about whether or not there's overwhelming evidence may have had a lot more strength to it had this not been a second trial after the identical evidence was presented to the first trial, to the first jury, and it was decided it was split 6-6. To say that this is not a close case as a result of that then ignores that whole first trial, which I don't think is appropriate for us to do. The fact Pulido was six months beforehand probably is why it wasn't in the minds of the defense counsel, but I don't know. But the question of whether or not there's a sua sponte duty of the Court, I believe at that point in time when the district attorney makes this misstatement of law to the jury and encourages them to find a misstatement, to follow the wrong law, at that point I think that's the case. Were you talking about robbery or was he talking about murder? In the kind of the – your colleague has just argued. Can you address that? Yes, I can. In Volume 10 of 1049 of the R.T. is where we find this statement. It comes first in the context of whether or not he's guilty of murder, and then the DA specifically goes on to say, well, let's look at it. We have felony murder in this case. He says he's not part of the felony, and then he addresses this question of is he part of the felony of robbery at all. It's clear right within the context. It is completely correct that he didn't at that point say, and also guilty of felony murder again, but he just said it in the paragraphs just before that. So in the context of what was presented, there is no question that when he was arguing this point, he's saying he's not guilty. It doesn't matter if he's guilty of – it doesn't matter when he picked up the gun or when he participated because he's guilty of robbery and therefore guilty of the felony murder in the first degree. Thank you, Mr. Blum. Mr. Johnson. Yes, thank you. The case just argued is submitted. 0257127 Castillo v. Small. Each side has 10 minutes. Mr. Rubin, sorry.
judges: Silverman, Gould, Bea